IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAMONT THOMAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 10-cv-017-DRH |
| | ) |
| MICHAEL RANDLE, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**HERNDON, Chief Judge:**

Plaintiff Lamont Thomas, an inmate in the Lawrence Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under

§ 1915A; portions of this action are subject to summary dismissal.

**FACTS ALLEGED**

Thomas states that in early 2009, he was persistently ill with a rash, diarrhea, vomiting, sweating, and insomnia. On the morning of April 7, 2009, during line movement returning from the chow hall, Thomas was suddenly stricken with a bout of diarrhea and gas. He tried to control it, but he was unsuccessful; his bowels gave way. Thomas waved at the officers escorting the line, Defendants Ray and Huston, hoping he could discreetly tell them of his predicament. Instead, due to his antics, Ray stopped the line movement, and Huston escorted him to the front of the line. Ray then ordered Thomas to give Ray his I.D. card, which was clipped to Thomas's collar. Thomas's hands were soiled from his diarrhea, so he told them that one of them could take it off his collar. Defendants construed his response as a refusal to obey a direct order and radioed for a lieutenant.

Defendant Shell responded to the call. Shell handcuffed Thomas, addressed him with a racial epithet, and took him to segregation. At the segregation unit, Shell handed Thomas over to Defendant Jennings, who then turned him over to Defendant Cooper. Thomas persistently requested medical attention, as well as access to a toilet and clean clothes, but his requests were denied as he was taken to segregation. Thomas was confined to a shower unit for about an hour before Cooper took him to his segregation cell. Cooper told him he would get him some segregation-allowed items, but failed to do so. Ray later wrote a disciplinary ticket charging Thomas with disobeying a direct order.

A week earlier, Thomas had a run-in with Shell at the medical unit. Thomas was trying to hand-deliver some of his medical records to the doctor, but the doctor, Defendant Fenoglio, said that Thomas could not bring documents to the medical unit. Shell happened to be present at the time,

and Shell took sides with the doctor. Thomas later filed a grievance against Shell and Fenoglio over this matter. He now believes that Shell's actions were partly motivated by retaliation.

Thomas states that he was not provided with bedding, toiletries, or clean clothing until the evening of April 9. During that time, he had only a thin jump suit to wear. He continued to experience diarrhea and cramps, making it difficult to sleep or eat, yet he was not provided with any medical treatment. On the evening of April 9, Thomas was taken to the medical unit for his weekly visit for his Hepatitis-C treatment. That same evening, he finally received bedding, linens, and toiletries.

Also on April 9, Defendants Goins and Neilsen presided over the disciplinary hearing on the ticket written on April 7. The ticket charged Thomas with disobeying a direct order, due to his refusal to hand his I.D. card to Ray or Huston. Thomas explained that in addition to his other health issues, he is also infected with Hepatitis-C. His justification for not handing them his I.D. card is that his hands were soiled with feces and blood, and he did not want to risk spreading his disease to them by touching his I.D. card. Despite his explanation, he was found guilty and punished with 14 days in segregation and 30 days at C-grade. On April 10, Defendant Ray escorted Thomas to the medical unit for an appointment, where a nurse provided him with medication to treat his diarrhea and gas. Ray told Thomas that he would try to get his punishment reduced, but apparently that did not happen.

Thomas filed grievances over these events, which were denied by Defendants Vaughn, Moran and Ryker.

**MEDICAL TREATMENT**

Thomas's primary claim is that in failing to take him for medical treatment after he soiled

himself, and in leaving him in segregation for more than two days without medical treatment, Defendants Ray, Huston, Shell, Jennings and Cooper were deliberately indifferent to his serious medical needs, in violation of his rights under the Eighth Amendment.

> A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Id.*; *Farmer*, 511 U.S. at 834. Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). Still, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

*Edwards v. Snyder*, 478 F.3d 827, 830-31 (7th Cir. 2007).

Applying these standards to the allegations in the complaint, the Court is unable to dismiss Thomas's medical care claim against Ray, Huston, Shell, Jennings and Cooper at this time.

Thomas also lists Dr. Fenoglio as a defendant. The basis for this claim appears to be the incident in early April in which Fenoglio would not allow Thomas to hand-deliver medical records to him. This brief, isolated incident does not support a claim that Fenoglio was deliberately indifferent to Thomas's medical needs. Thus, Fenoglio will be dismissed from this action.

The same goes for Wexford Health Sources. The Seventh Circuit has held that a corporate

entity violates an inmate's constitutional rights, in this case deliberate indifference to Thomas's serious medical needs, only when it has a policy that creates conditions that infringe upon an inmate's constitutional rights. *See Woodward v. Corr. Medical Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Thomas has not alleged that these alleged events occurred due to any policy or practice of Wexford Health. Thus, Wexford Health will be dismissed from this action.

### CONDITIONS OF CONFINEMENT

Thomas next alleges that Defendants Cooper and Jennings did not provide him with bedding, toiletries, or clean clothing for more than two days. During that time, he had only a thin jump suit to wear. He continued to experience diarrhea and cramps, making it difficult to sleep or eat, yet he was not provided with any medical treatment.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishments clause. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element – establishing a defendant's culpable state of mind. *Id.*

Applying these standards to the allegations in the complaint, the Court is unable to dismiss any portion of this claim at this time.

### DISCIPLINARY PROCEEDING

Thomas alleges that in writing a disciplinary ticket and finding him guilty, Defendants Ray, Huston, Shaw, Goins and Neilsen deprived him of due process, in violation of his rights under the Fourteenth Amendment.

When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Thomas was sent to disciplinary segregation for 14 days. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Therefore, Thomas's due process claim is without merit.

### GRIEVANCES

Thomas alleges, generally, that Defendants Moran, Vaughn and Ryker denied his grievances over all these matters. However, "a state's inmate grievance procedures do not give (7th Cir. 1995). Thomas has no constitutional right to receive a favorable response to his grievances, and thus he has failed to state a claim upon which relief may be granted.

### DEFENDANT RANDLE

Thomas has listed Michael Randle as defendant in this action. However, after a close reading of the complaint, the Court cannot find any reference to Randle in the text of the complaint.

The reason that plaintiffs, even those proceeding pro se, for whom the Court is required to liberally construe their complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003) (a "short and plain" statement of the claim suffices under Fed. R. Civ. P. 8 if it notifies the defendant of the principal events upon which the claims are based); *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000) ("notice pleading requires the plaintiff to allege just enough to put the defendant on notice of facts providing a right to recovery"). Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

Because Thomas makes no allegations against Randle, he will be dismissed from this action.

### APPOINTMENT OF COUNSEL

Thomas also seeks appointment of counsel in this action. There is no absolute right to

appointment of counsel in a civil case.  *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Santiago v. Walls*, 599 F.3d 749, 760-61 (7th Cir. 2010).  When presented with a request to appoint counsel, the Court must make the following inquiries: "(1) has the ... plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself."  *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).  With regard to the first step of the inquiry, Thomas states that he has and will continue to attempt to hire a pro-bono law firm that specializes in civil law.  The Court finds that such an attestation fails to provide sufficient information to the Court to determine if Plaintiff has made a "reasonable attempt to obtain counsel."

With regard to the second step of the inquiry,"the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand."  *Id*.; *see also Santiago v. Walls*, 599 F.3d at 762-64.  At this point in time, it is difficult for the Court to assess this factor.  *See Romanelli v. Suliene*, _ F.3d _, 2010 WL 3155926 (7th Cir. Aug. 11, 2010) (noting infancy of case makes it impossible to make accurate determination of Plaintiff's abilities to litigate case). Thomas's claim does not appear to be factually complex, as described above.  From a legal standpoint, the litigation of any constitutional claim often falls in the range of complex.  Plaintiff cites a number of reasons why he feels the litigation is too complex for him to handle this matter *pro se.*  Nevertheless, Defendants have not yet been served with process and, therefore, have not yet filed a reply or answer to the complaint.  Future developments may change the Court's mind on whether counsel should be appointed or not.  At this early stage and time, though, the Court concludes that it is too early to determine whether this case is too complex for Plaintiff, thus far Thomas appears to be competent to litigate his case.  Therefore,

since the Plaintiff fails both prongs of the *Pruitt* analysis, the motion for appointment of counsel (Doc. 3) is **DENIED**, without prejudice (meaning he can bring the motion up again when he feels he is in a position to meet the *Pruitt* requirements).

### DISPOSITION

**IT IS HEREBY ORDERED** that Plaintiff's claims regarding the disciplinary proceeding and his denied grievances are **DISMISSED** from this action with prejudice. Further, Defendants **FENOGLIO, GOINS, MORAN, NEILSEN, RANDLE, RYKER, SHAW, WEXFORD HEALTH** and **VAUGHN** are **DISMISSED** from this action with prejudice. Plaintiff is advised that, within the Seventh Circuit, dismissal of these claims and defendants may count as a strike for purposes of § 1915(g). *See George v. Smith,* 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge,* 391 F.3d 852, 855 (7th Cir. 2004).

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **COOPER, HUSTON, JENNINGS, RAY** and **SHELL**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **COOPER, HUSTON, JENNINGS, RAY** and **SHELL** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of

the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action.  This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to provide such notice may result in dismissal of this action.  *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

DATED:   August 31, 2010.

/s/    DavidRHerndon
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**