**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **LAMONT THOMAS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10−cv−00017−MJR-SCW** |
| | ) | |
| **LT SHELL, LT RAY, LEE HUSTON,** | ) | |
| **LT JENNINGS, C/O COOPER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to District Judge Michael J. Reagan pursuant to 28 U.S.C. §§636(b)(1)(B) and (C).

### BACKGROUND

Plaintiff Lamont Thomas ("Thomas"), a prisoner at Lawrence Correctional Center ("Lawrence"), filed this suit against fourteen (14) defendants alleging deprivations of his constitutional rights under 42 U.S.C. §1983, including deliberate indifference to his medical needs, inhumane conditions of confinement, and violations of his due process rights (Doc. 1). Chief Judge David R. Herndon performed a preliminary review of Thomas' complaint pursuant to 28 U.S.C. §1915A, and entered an order on August 31, 2010 which dismissed Thomas' due process claims and nine (9) of the Defendants *with* prejudice. Two claims remain: (1) a claim for deliberate indifference to Thomas' medical needs against the five remaining defendants, corrections officers at Lawrence, Lt Shell ("Shell"), Lt Ray ("Ray"), Lee Huston ("Huston"), Lt Jennings ("Jennings"), and C/O Cooper ("Cooper"); and (2) a claim regarding his conditions of confinement, brought against Cooper and Jennings. Judge Herndon's August 31 Order also referred this matter to United States Magistrate Judge Clifford J. Proud pursuant to 28 U.S.C. §§636(b)(1)(B), Federal Rule of Civil

Procedure 72(b), and Southern District of Illinois Local Rule 72.1(a) (Doc. 7). This case was reassigned to United States District Court Judge Michael J. Reagan and Magistrate Judge Stephen C. Williams on January 3, 2011 (Doc. 17).

Before the Court is a Motion for Summary Judgment filed on behalf of the remaining defendants, alleging that Thomas' claims should be dismissed because he failed to satisfy the requirements of the Prison Litigation Reform Act (42 U.S.C. §1997(e)) by failing to exhaust his administrative remedies (Doc. 21). This motion for summary judgment has been fully briefed by the parties (Docs. 21, 26, 27). Based on the record and fully briefed motion; and for the reasons outlined below, it is **RECOMMENDED** that the District Court **GRANT IN PART** and **DENY IN PART** Defendants' Motion for Summary Judgment, and adopt the following findings of fact and conclusions of law. In particular, it is **RECOMMENDED** that the claims against Defendants Ray, Huston, Jennings and Cooper be **DISMISSED WITH PREJUDICE** for Thomas' failure to exhaust his administrative remedies.

## FINDINGS OF FACT

On summary judgment, the Court must construe all facts in the light most favorable to Thomas, as the non-moving party, and draw all reasonable inferences in his favor. *Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). The material facts and sequence of events relevant to Defendants' motion are generally not in dispute. Rather, the parties' dispute whether the grievances filed by Thomas were sufficient to meet the PLRA's exhaustion requirements as to the claims he makes in this lawsuit. In order to resolve whether Thomas exhausted his administrative remedies, it is necessary to compare the conduct complained of in the claims that remain in the instant lawsuit relative to the conduct referenced by Thomas throughout the grievance process.

<u>Thomas' Complaint:</u>

The relevant allegations in Thomas' complaint are as follows:  After a meal on April 7, 2009, Thomas and approximately 80 other prisoners were being walked in line from the prisoners' mess to their cellblocks by Defendants Ray and Huston (Doc. 1, p. 4), corrections officers [as are all of the remaining defendants].  *Id.*   At the time, Thomas was suffering from diarrhea, and had the misfortune to have an episode of bowel incontinence while walking in line.  *Id.*   He waved his arms and fidgeted in an attempt to get the attention of Ray and Huston.  *Id.* at 5.  Ray stopped the line, called him forward, and asked for Thomas' identification card.  *Id.*   Thomas chose not to produce the card as it had some of his blood and feces on it, and he was concerned that by doing so he might infect the corrections officers with Hepatitis-C, a blood-borne and communicable infectious disease with which Thomas is afflicted (Doc. 1, p. 5).  Ray and Huston, seeing Thomas' refusal as defiance, summoned a lieutenant, Defendant Shell.  *Id.* at 7.  Thomas alleges he pleaded for medical treatment at the nearby prisoner medical unit, and Shell, Ray, and Huston ignored his pleas (Doc. 1, p. 7).  Shell allegedly handcuffed Thomas, said "I told you I'd get your black ass" and transported him to the segregation unit in handcuffs over this infraction.  *Id.*   Thomas alleges that this incident was motivated by racial bias and retaliation from an earlier incident between Thomas and Shell on the medical wing a week prior, about which Thomas filed a grievance against Shell and some of the medical staff.  *Id.* at 6-7.  Ray and Huston witnessed this incident and did not interfere.  *Id.*

Thomas alleges that Shell turned him over to Defendant Jennings at the segregation unit, told Jennings that Thomas had written him (Shell) up the week prior, and that "pay back is a bitch." (Doc. 1, p. 8).  Jennings turned custody of Thomas over to Defendant Cooper.  Thomas alleges he again requested medical care and access to a toilet and was ignored, while the corrections officers joked about his misfortune.  *Id.*   Cooper placed Thomas in a shower stall, and Thomas claims he waited an hour before being processed into the segregation unit.  *Id.*   Thomas requested toiletries,

clean clothing and a shower and was told he would have to wait until he was processed. *Id.* Cooper allegedly searched Thomas, was aware that Thomas was still wearing his soiled underclothing, but made him redress so he could be placed in a segregation cell. *Id.* Thomas claims he was placed in a segregation cell but was not given bedding, toiletries, soap, towels, or clean clothing for 3 days—allegedly in retaliation for filing a grievance about Shell's conduct the week prior or as a courtesy to Shell (Doc. 1, p. 8). At some point later, Cooper allegedly promised to get Thomas clean clothes and a biohazard bag for his soiled clothing and call the medical unit. *Id.*

Despite this promise, Thomas alleges he was held in a segregation cell for three days (the morning of April 7, 2009 through the evening of April 9, 2009) in the segregation unit in a jumpsuit, with no bedding on his mattress and a bare pillow (Doc. 1, p. 10). Despite his weakened medical condition, Thomas claims he was not provided medical care until his weekly hepatitis check-up, in the evening of April 9, 2009. *Id.*

Thomas' Grievances

On April 10, 2009, Thomas filed *two* written grievances (Doc. 1-1, pp. 9-12, "04/10/09 grievances") concerning his treatment by staff at Lawrence between April 7, 2009 and April 10, 2009 (Doc. 21-1, p. 2). These 04/10/09 grievances were eventually appealed to the Administrative Review Board after the necessary intermediate steps pursuant to the grievance procedures outlined in 20 Il. A.D.C. 504.810 *et seq.* (Doc. 21-1, p. 2; Doc. 26-9, pp. 2-3). The 04/10/09 grievances were the only relevant grievances filed by Thomas pursued through all of the requisite statutory steps. *Id.* Defendants Cooper and Huston are not named or otherwise described in either of the 04/10/09 grievances, although there are general allegations made regarding "c/o staff and Lt. Shell" (Doc. 1-1, p. 9), and "Lt. Shell + staff, Wexford, RNs" (Doc. 1-1, p. 10) addressed below.

Thomas subsequently filed another grievance on June 24, 2009 (Doc. 26-4) complaining of lack of treatment by medical staff, but none of the remaining defendants (Shell, Ray, Huston, Cooper or Jennings) was identified in this grievance either.

For clarity's sake, the allegations in the 04/10/09 grievances as to each remaining defendant will be addressed individually.

<u>Huston:</u>  Huston is not mentioned in the 04/10/09 grievances by name or description.

<u>Cooper:</u>  Cooper is not mentioned in the 04/10/09 grievances by name or description.

<u>Ray:</u>  Ray is not mentioned with reference to denial of medical care and is instead referred to as a "fair c/o," (Doc. 1-1, p. 10), and as transporting Thomas on April 10, 2009 to the sick line for medical care (Doc 1-1, pp. 10 and 12).  References to Ray about the April 7, 2009 incident do not implicate Thomas' medical care.  *Id.*

<u>Jennings:</u>  Jennings is alleged in the 04/10/09 grievances to have seen Thomas' allegedly ill condition and had other corrections officers move Thomas into a cell with a toilet because "he's sick" (Doc 1-1, pp. 10, 12).  Neither grievance suggests that Jennings' actions were in error or caused Thomas harm (Doc 1-1, pp. 9-12).

<u>Shell:</u>  Shell is noted specifically as refusing the plaintiff medical care on 04/07/09 – "I was refused med-care access by Lt. Shell" (Doc. 1-1, p. 10).  Lt. Shell's conduct was specifically alleged— that he did not transport plaintiff to the medical unit after plaintiff pleaded with him, instead handcuffing and transporting him to the segregation unit for defying Officer Ray's orders (Doc 1-1, page 12).  "…Lt. Shell, who came/encored [sic] my –voiced- pleas for amediate [sic] H.C.U. Med-care and to my and c/o Ray's surprise Lt. Shell just cuffed and walked me to Seg-…" *Id.*

<u>General allegation:</u>  The 04/10/09 grievances contain allegations that "I [Thomas] was erroneously put in Seg[regation unit] after being refused med[ical] care by c/o staff and Lt. Shell – etc:" (Doc 1-1, p. 9), and that "I [Thomas] was refused med-care access by Lt. Shell + staff,

Wexford, RNs" (Doc. 1-1, p. 10). There is no further identifier as to who in the "c/o staff" was responsible other than as noted above. No attempt was made to describe any unnamed corrections staff by description other than name.

## CONCLUSIONS OF LAW

42 U.S.C.A. §1997e(a) bars any prisoner suits under §1983 or other federal laws until administrative remedies available to that prisoner are exhausted. This requirement is to be raised as an affirmative defense by a defendant. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910 (U.S. 2007). The boundaries of proper exhaustion are the prison's requirements. *Id.* at 218. Proper use of the prison grievance system requires a prisoner to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The grievance procedures in Illinois describe a multi-step process starting with the prisoner's counselor or a written grievance, a ruling by the Chief Administrative Officer (normally, the Warden), and an appeal to the Director of the Department of Corrections. 20 Il. A.D.C. 504.810 *et sequitur*. Illinois regulations require that each grievance "shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." 20 Il. A.D.C. 504.810(b) [emphasis added].

If an inmate fails to follow these grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes "using all steps that the agency holds out, and doing so properly." *Id.* at 1024. The Seventh Circuit emphasizes that the

purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. Only when officials have been afforded this opportunity has the prisoner properly exhausted all available remedies. *See, e.g., Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir.2006); *Dole*, 438 F.3d at 809.

The judge, as opposed to a jury, is to be the trier of fact on questions of whether a prisoner plaintiff has exhausted his administrative remedies. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). *Pavey* requires that where there is a factual dispute (not merely a legal question) regarding exhaustion, the district judge is to conduct a hearing on exhaustion and allow any discovery on this issue he deems appropriate. *Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009). If there is no disputed fact regarding exhaustion, however, then there is no reason to conduct an evidentiary hearing. *Id.*

Here, there appears to be no factual dispute as it relates to exhaustion. The parties agree that Thomas' two 04/10/09 grievances were eventually appealed to the Administrative Review Board after the necessary intermediate steps (Doc. 21-1, pp. 2-3; Doc. 26-9, p. 2). These were the only pertinent grievances filed by Thomas that were pursued through all of the statutory steps. *Id.* Therefore, if the conduct in the remaining claims was not raised in these grievances, then Thomas did not exhaust his administrative remedies, because the prison officials were unable to address these claims internally, and those unexhausted claims must be dismissed. *Kaba*, 458 F.3d at 684. Similarly, if plaintiff did not name a defendant, or provide as much descriptive information as possible, then he is not in compliance with the statutory grievance requirements and his claims as to those defendants were not exhausted, but are instead forfeited. *Pozo*, 286 F.3d at 1025.

Defendant Cooper was not named in the 04/10/09 grievances, and he was not described in any other way. This failure to include any descriptive information is insufficient under the prisoner grievance procedures as set forth in 28 Il. A.D.C. 810(b). It is therefore **RECOMMENDED** that the claims against Cooper should be **DISMISSED WITH PREJUDICE**.

Thomas contends that his general allegation—that "after being refused med-care by c/o staff + Lt. Shell… " (Doc. 1-1, p. 9)—is sufficient to identify Defendants Ray, Huston, Cooper, and Jennings because he did not know their names or badge numbers at the time he filed his grievances (Doc. 26-1, p. 4). However, here Thomas was face to face with the corrections staff he is accusing of misconduct. This is unlike the situation in *Glick v. Walker,* 2010 WL 2775864 (7th Cir.2010), where the prisoner could not be expected to "peel back [the] layers of bureaucracy" to name a person responsible for an administrative decision in an "army of administrators" veiled by "a mystifying web of rules and procedures." Thomas certainly could have provided at least some minimal physical description of the offending staff, or where and how he interacted with them, in order to put the prison administration on notice of the problem and to comply with the grievance guidelines. 28 Il. A.D.C. 810(b). The Court finds that Thomas' vague and generalized allegations regarding "c/o staff" are insufficient for purposes of identifying Defendants Ray, Huston, Cooper and Jennings, and exhausting his administrative remedies as to them.

Thomas' claim as to the conditions of his confinement stem from allegations in his grievance that Defendants Cooper and Jennings did not provide him with toiletries, bedding, and fresh clothing for several days in the segregation unit  (Doc. 1, pp. 8-10). Even giving the 04/10/09 grievances a very liberal reading, neither articulates any complaints or facts regarding conditions of confinement of plaintiff other than the unfortunate aftermath of Thomas' accident in the mess line (Doc. 1-1, pp. 9-12), and an isolated note on the top of one page that reads "with no bedding c/o mistake 7-3" (Doc. 1-1, p.12). The timeframe Thomas was without bedding and any personnel implicated are unclear from this fragment. This is insufficient to satisfy the requirements of 20 Il. A.D.C. 504.810(b). Further, in one grievance (Doc. 1-1, p.12) Thomas noted that he was escorted to sick-call on 04/10/09 per pleas to HCU (the prisoner health care unit) on his behalf by Jennings and other officers. Certainly this language in the grievance does not give any indication that

Jennings acted inappropriately. These grievances therefore do not provide sufficient facts to suggest a claim for improper conditions of confinement. It is therefore **RECOMMENDED** that the claim against Cooper and Jennings as to the conditions of Thomas' confinement should therefore be **DISMISSED WITH PREJUDICE.**

Thomas' allegations regarding denial of medical care against all defendants are similarly vague and insufficient as to most of the defendants. No language in the grievances implicates Huston or Cooper in the denial of medical care (Doc. 1-1, p. 9-12). Jennings was noted as seeing Thomas' allegedly ill condition and having other corrections officers move him into a cell with a toilet (Doc. 1, p. 10, 12). Neither 04/10/09 grievance suggests that Jennings' actions were improper or caused Thomas harm. *Id.* Ray is referred to as a "fair c/o" (Doc. 1-1, p. 10) and transported plaintiff to the sick line for medical care on 04/10/09. *Id.* According to the grievance, Ray was not aware of Thomas' ill condition until three days later, and so would not know that Thomas needed medical care. *Id.* Again, these grievances do not provide facts sufficient to suggest a claim for improper denial of medical care as to these four defendants. For these reasons, it is **RECOMMENDED** that the claim against Ray, Thomas, Cooper, and Huston for deliberate indifference to Thomas' medical needs should therefore be **DISMISSED WITH PREJUDICE**.

By contrast, Thomas' claim against Shell as to improper denial of medical care is stated explicitly in the 04/10/09 grievances. Shell is noted specifically as refusing the plaintiff medical care on 04/07/09 (Doc. 1-1, p. 9-10). Thomas alleges that Shell did not transport Thomas to the medical unit after Thomas pleaded with him, instead handcuffing and transporting Thomas to the segregation unit for defying Officer Ray's orders (Doc 1-1, p. 12). "…Lt. Shell, who came/encored [sic] my –voiced- pleas for amediate [sic] H.C.U. Med-care and to my and c/o Ray's surprise Lt. Shell just cuffed and walked me to Seg-…" *Id.* This allegation definitely outlines a potential claim of deliberate indifference to a medical need, and sets forth the requisite factual details under 28 Il.

A.D.C. 810(b).   Since this allegation against Shell is clearly stated in the 04/10/09 grievances, and was pursued through the proper procedures to the full exhaustion of the available administrative remedies, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment should be **DENIED** as to Thomas' claim of deliberate indifference to his serious medical needs against Defendant Shell *only*.

## CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (Doc. 21) be **GRANTED IN PART** and **DENIED IN PART,** and the Court adopt the foregoing findings of fact and conclusions of law.   If District Judge Reagan adopts this Report and Recommendation in its entirety, then only Thomas' claim of deliberate indifference to his serious medical needs against Defendant Shell will remain in this action.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation within **fourteen (14) days** of being served with a copy.   The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).   Accordingly, **Objections to this Report and Recommendation must be filed on or before Monday, July 11, 2011.**

**IT IS SO ORDERED**.

DATED June 24, 2011.

/s/ **Stephen C. Williams**
STEPHEN C. WILLIAMS
United States Magistrate Judge